IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| LOMA LINDA UNIVERSITY | ) |
| KIDNEY CENTER | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. 06cv1926 |
| | ) Consolidated with 06cv1927 |
| | ) |
| MICHAEL O. LEAVITT, IN HIS | ) (TFH) |
| OFFICIAL CAPACITY AS SECRETARY | ) |
| OF HEALTH AND HUMAN SERVICES | ) |
| | ) |
| Defendant, | ) |

_____ )

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 (a) of the Federal Rules of Civil Procedure,

Plaintiffs move for summary judgment on the basis that there is no genuine

issue as to any material fact, and Plaintiff is entitled to judgment as a matter

of law.  The reasons for this motion are fully set forth in the accompanying

Memorandum of Points and Authorities.  Plaintiff further requests an

opportunity to present oral argument in this matter. A proposed Order is

attached.

DATED: August 30, 2007

Respectfully submitted,


/s
_____
JEFFREY A. LOVITKY
Attorney at Law
1776 K Street, NW, Ste. 200
Washington, DC 20006
(202)429-3393
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

LOMA LINDA UNIVERSITY            )
KIDNEY CENTER                    )
                                 )
Plaintiff,                       )
                                 )
                                 )
v.                               ) Civil Action No. 06cv1926
                                 ) Consolidated with 06cv1927
                                 )
MICHAEL O. LEAVITT, IN HIS       )  (TFH)
OFFICIAL CAPACITY AS SECRETARY   )
OF HEALTH AND HUMAN SERVICES     )
                                 )
Defendant,                       )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**



**JEFFREY A. LOVITKY**

Attorney at Law
1776 K. Street, N.W.,
Ste. 200
Washington, DC 20006
T: (202) 429-3393
F: (202) 318-4013

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

I.     INTRODUCTION................................................................................ 1

II.    LEGAL AND FACTUAL BACKGROUND ......................................... 1

III.   ARGUMENT ...................................................................................... 6

       A.  Issues Presented ........................................................................ 6

       B.  Standard of Review..................................................................... 7

       C.  The Exception Request Should Be Deemed Approved
           Pursuant to 42 U.S.C. § 1395rr(b)(7) ............................................ 8

           1.  The Administrator's Position Is Inconsistent With
               Congressional Intent.................................................................. 10

           2. Notification of Loma Linda Was Required By FOIA............... 12

       D.  Remand Is Required Based On The Secretary's Failure
           To Furnish An Adequate Record As To The Date Upon Which
           The Denial Letter Was Signed ....................................................... 14

       E.  The Secretary's Finding That Loma Linda Abandoned
           Its Argument Concerning the Merits Of The Exception
           Request Was Arbitrary And Capricious And Not
           Supported By Substantial Evidence ............................................... 17

       F.  The Secretary's Failure To Make A Determination On
           The Merits Of The Exception Request Constituted A
           Violation Of The APA And The Requirements Of Procedural
           Due Process ................................................................................... 20

IV.    CONCLUSION...................................................................     22

# TABLE OF AUTHORITIES

## FEDERAL CASES

American Mail Line, Ltd. v. Gulick,
    411 F.2d 696 (D.C. Cir. 1968)............................................................. 13

Bristol-Myers Co. v. FTC,
    598 F.2d 18 (D.C. Cir. 1978)............................................................. 13

Citizens to Preserve Overton Park, Inc. v. Volpe,
    401 U.S. 402 (1971)............................................................................. 7

Envtl. Defense Fund, Inc. v. Costle,
    657 F.2d 275 (D.C. Cir. 1981)........................................................... 16

Fla. Power & Light Co. v. Lorion,
    470 U.S. 729 (1985)........................................................................... 16

Goldberg v. Kelly,
    397 U.S. 254 (1970)........................................................................... 22

Good Samaritan Hosp., Corvallis v. Mathews,
    609 F.2d 949 (9th Cir. 1979). .............................................................. 8

In re Gault,
    387 U.S. 1(1967)…..... ……………………………………………11

Jordan v. United States DOJ,
    591 F.2d 753 (D.C. Cir. 1978)........................................................... 12

Mathews v. Eldridge,
    424 U.S. 319 (1976)........................................................................... 21

## FEDERAL STATUTES

5 U.S.C. § 557(c) ................................................................................ 20

5 U.S.C. § 552(a)(2) ........................................................................... 13

5 U.S.C. § 552(a)(2)(A) ................................................................. 12,13

5 U.S.C. § 552(a)(2)(E) ...................................................................... 12

5 U.S.C. § 552(a)(2)(ii) ...................................................................... 14

5 U.S.C. § 706(2) .................................................................................7

5 U.S.C. § 706(2)(A) ............................................................................1

42 U.S.C. § 1395oo(f)(1) ............................................................... 4,6,7

42 U.S.C. § 1395rr(b)(7) ................................................ 2,6,8,14,17,18,22

## FEDERAL REGULATIONS

42 C.F.R. § 405.1875(e)(2) (2000) ......................................................5

42 C.F.R. § 405.1875(h)(1) (2000) .................................................... 20

42 C.F.R. § 405.1875(h)(2) (2000) .................................................... 21

42 C.F.R. § 405.1875(h)(4) (2000) .................................................... 21

42 C.F.R. § 413.184(a)(1) (2000) ........................................................3

42 C.F.R. § 413.194(b)(1) (2000) ........................................................4

42 C.F.R. § 413.194(c)(1) (2000) ...................................................... 11

62 Fed. Reg. 43657 (Aug. 15, 1997) ...................................................3

70 Fed. Reg. 70116 (Nov. 21, 2005) ...................................................3

**ADMINISTRATIVE MATERIALS**

PRM 2723 ................................................................................ 8

PRM 2723.3(F) ........................................................................ 8

PRM 2724 .............................................................................. 18

**LEGISLATIVE HISTORY**

Omnibus Budget Reconciliation Act of 1986, H.R. Rep. No. 99-727
(1986), *Reprinted* in 1986 U.S.C.C.A.N. 3607 .......................... 10

I.    **INTRODUCTION**

There are two plaintiffs in this consolidated action, Loma Linda University Kidney Center ("LLKC") and Loma Linda University Medical Center ("LLMC"), hereinafter referred to collectively as "Loma Linda." LLKC is a non-profit freestanding outpatient dialysis facility located in Loma Linda, California.  Loma Linda Kidney Center Administrative Record (hereinafter "LLKC AR") at 236.  LLMC operates a hospital based outpatient dialysis facility in Loma Linda, California. Loma Linda Medical Center Administrative Record (hereinafter "LLMC AR") at 522.

In this action, Loma Linda challenges the denial of their requests for an exception to the Medicare prospectively determined payment rate for dialysis treatments.  The Secretary's action in denying these exception requests constituted arbitrary and capricious agency action in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

II.    **LEGAL AND FACTUAL BACKGROUND**

Title XVIII of the Social Security Act provides health insurance protection to qualified individuals under the Part A (hospital insurance) and Part B (voluntary supplementary medical insurance) programs. 42 U.S.C. §§ 1395 et seq. This program, commonly referred to as the Medicare program,

is administered by the Centers for Medicare & Medicaid Services ("CMS").[1]

The Administrator of CMS ("Administrator") functions under the general

direction and supervision of the Secretary of Health and Human Services

(the "Secretary").

Pursuant to Section 1881(b) of the Social Security Act, and

implementing regulations, facilities providing End Stage Renal Dialysis

("ESRD") under the Medicare program are reimbursed for outpatient

dialysis services under the "composite rate" system. 42 U.S.C. §

1395rr(b)(7). The "composite rate" is a prospectively determined payment

rate for each outpatient dialysis session. Id.

Facilities are also authorized to obtain an exception to the composite

rate. 42 U.S.C. § 1395rr(b)(7). An exception request will be deemed

approved unless it is disapproved by the Secretary within 60 working days.

Id.

LLKC and LLMC each submitted requests for an exception to the

composite rate for outpatient dialysis services on August 28, 2000. LLMC

AR at 517-44; LLKC AR at 235-52. These requests were submitted to Blue

---

[1] The Centers for Medicare & Medicaid Services was until recently known
as the Health Care Finance Administration ("HCFA"). Certain portions of
the administrative record refer to CMS, and other portions refer to HCFA.
For purposes of this brief, the terms CMS and HCFA are used
interchangeably.

Cross of California, which serves as the Secretary's fiscal intermediary.[2]

LLKC sought an additional $51.64 per treatment, over and above the

composite rate of $134.95 for hemodialysis treatments, and an additional

$49.43 for peritoneal treatments.   LLKC AR at 238.  LLMC sought an

additional $243.02 per treatment, over and above the composite rate of

$138.08 for hemodialysis treatments.  LLMC AR at 524.

Loma Linda's requests were based upon atypical service intensity, and

the resulting additional nursing and administrative costs.  LLKC AR at 236;

LLMC AR at 522.  The Secretary's implementing regulations authorize an

exception to the composite rate based on atypical service intensity when a

provider demonstrates that *"a substantial proportion of the facility's*

*outpatient maintenance dialysis treatments involve atypically intense*

*dialysis services, special dialysis procedures, or supplies that are medically*

*necessary to meet special medical needs of the facility's patients."* 42 C.F.R.

§ 413.184(a)(1) (2000).[3]

---

[2] CMS has set up a network of "Intermediaries" (generally health insurance
companies) to administer Part A of the Medicare program, subject to the
direction of CMS, and subject to further review by the Administrator and the
Secretary.
[3] The exception request submitted by Plaintiffs falls under the version of the
regulations which were originally promulgated on Aug. 15, 1997, at 62 Fed.
Reg. 43657, 43670.  These regulations may be found at 42 C.F.R. Part 413
(2000). These regulations were amended on November 21, 2005. See 70 Fed.
Reg. 70116, 70331, Nov. 21, 2005.  Plaintiff has cited throughout this brief

By letter dated November 15, 2000, CMS advised the intermediary that it denied the exception requests.  LLKC AR at 634-41; LLMC AR at 960-965.  The primary grounds cited by CMS for denial of the LLKC exception request were its alleged failure to substantiate an atypical patient population, as well as any excess costs. LLKC AR at 634-41.  CMS did not challenge the atypical nature of the patient population treated by LLMC. Rather, the CMS denial of the LLMC exception request was based solely on cost issues.  LLMC AR at 960-65.

The Secretary's regulations authorize a provider to appeal the CMS denial to the Provider Reimbursement Review Board ("PRRB" or "Board"). 42 C.F.R. § 413.194(b)(1) (2000).  The decision of the PRRB is subject to further review by the Administrator of CMS. Id.  The decision of the PRRB constitutes final agency action, unless the Administrator, within 60 days after the provider is notified of the PRRB's decision, reverses, affirms, or modifies the Board's decision.  42 U.S.C. § 1395oo(f)(1).  Thereafter, providers may seek review of the agency action in federal district court.  Id.

The CMS denial of these exception requests were timely appealed to the PRRB by Loma Linda.  The PRRB rendered its decision in both cases on

_____

to the 2000 version of 42 C.F.R. Part 413, as the exception request was submitted on August 28, 2000.

July 27, 2006. LLMC AR at 25-32; LLKC AR at 25-32.  The PRRB found that the exception requests were "automatically approved" because CMS failed to notify the intermediary of its disapproval within the 60 working day period. LLMC AR at 28; LLKC AR at 28.   The PRRB further found that "…the substantive issue as to whether the exception denial was otherwise proper is moot."  LLMC AR at 29; LLKC AR at 29.

By letter dated August 7, 2007, CMS requested that the Administrator review the decision of the PRRB.  CMS argued that the exception request should not be automatically approved because the disapproval was rendered within the 60 working day period. LLMC AR at 19-21; LLKC AR at 19-21.

By letter dated August 9, 2006, the Administrator advised the parties that it had decided to review the PRRB decision.  The Administrator stated that the issue under consideration is "…whether the Board's decision is in keeping with the pertinent laws, regulations, and other criteria cited by the Board and by the parties in their comments."  LLMC AR at 17; LLKC AR at 17.  The applicable regulations mandate that submissions to the Administrator "*be limited to issues the Administrator has decided to review and confined to the record of the Board hearing*."   42 C.F.R.§ 405.1875(e)(2).

By letter dated August 22, 2006, LLMC and LLKC argued that the PRRB decision should be upheld, as CMS did not notify the intermediary of its disapproval until after the expiration of the 60 working day period. LLMC AR at 9-14; LLKC AR 9-14.

By decisions dated September 12, 2006, the Administrator reversed the PRRB. LLMC AR at 2-8.  LLKC AR at 2-8. The Administrator concluded that the 60 working day period was satisfied without regard to when the provider received notice of the disapproval.  The Administrator further stated as follows:  "*In this case, however, the parties dispute not the merits of the denial of the provider's exception request, but rather the interpretation of the pertinent statutory language governing the timing of CMS determination on composite rate exception requests*."  LLMC AR at 6; LLKC AR at 6.

The Administrator's decisions constituted final agency action.   42 U.S.C. § 1395oo(f)(1). Thereafter, Plaintiffs timely filed this consolidated action for review in federal district court.

**III.    ARGUMENT**

A.    Issues Presented

(1) Should the exception request have been deemed approved pursuant to 42 U.S.C. §1395rr(b)(7)?

(2) Did the Secretary's failure to furnish a complete administrative record require remand to the PRRB?

(3) Did the Secretary improperly conclude that Loma Linda abandoned the issue of whether its exception request was meritorious?

(4) Was the Secretary's failure to make a determination on the merits of the exception request a violation of the APA and the requirements of procedural due process?

B.    Standard of Review

An action under Section 1878 of the Social Security Act seeking judicial review of Medicare reimbursement determinations is subject to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq.  42 U.S.C. § 1395oo(f)(1).  Under the APA, a court must set aside agency action which is arbitrary or capricious, not consistent with the Medicare statute or regulations, or is unsupported by substantial evidence.  5 U.S.C. § 706(2). The APA requires the reviewing court to engage in a "thorough, probing, in-depth review."  Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971).

Although denominated a motion for summary judgment, this court's "review is not a determination of whether there is any genuine issue as to any material fact as in a ruling on a summary judgment motion, but rather

whether the agency action was arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole.*" Good Samaritan Hosp., Corvallis v. Mathews*, 609 F.2d 949, 951 (9th Cir. 1979).

C. The Exception Request Should Be Deemed Approved Pursuant To 42 U.S.C. §1395rr(b)(7)

Pursuant to 42 U.S.C. §1395rr(b)(7), an application for an exception *"…shall be deemed to be approved unless the Secretary disapproves it by not later than 60 working days after the date the application is filed*."  The exception request filed by Loma Linda should be deemed approved because the Secretary did not provide notification to Loma Linda of its disapproval until after the 60 working day period.

The Secretary has established the following procedures for the processing of exception requests.  First, the exception request is submitted to the intermediary.  The intermediary must make a preliminary recommendation to CMS on the exception request within 15 working days.  Provider Reimbursement Manual ("PRM") § 2723, at LLKC AR 711.  The intermediary next submits the exception request, along with its preliminary recommendation, to CMS.  PRM § 2723.3(F), at LLKC AR 715.  CMS then prepares a decision, and advises the intermediary of its action.  PRM § 2724

at LLKC AR 715.  The intermediary then notifies the provider of the CMS decision.

As noted by the Administrator, Loma Linda filed their exception requests with the Intermediary on August 28, 2000.  LLMC  AR at 2-3.  LLKC AR at 3.  According to CMS, the 60th working day after August 28 was November 20, 2000.  See LLKC AR at 19; LLMC AR at 19.[4]

By letters dated November 15, 2000, CMS denied both exception requests.  LLKC AR at 634-41; LLMC AR at 960-65.  By letter dated November 29, 2000, the intermediary notified LLKC that its exception request was denied.  LLKC AR at 443.  By letter dated December 11, 2000, LLMC was notified by the intermediary that its exception request had been denied.  LLMC AR at 202.

The PRRB ruled that the exception request must be deemed approved because CMS did not provide notice of its denial to the intermediary until after the 60 day deadline had expired. LLMC AR at 25-32; LLKC AR at 25-32.[5]  On September 12, 2006, the Administrator reversed the decision of the

---

[4] According to Loma Linda's count, the 60th working day after August 28, 2000 was November 24, 2000. See LLKC AR at 19; LLMC AR at 19
[5] The PRRB did not state how it determined when CMS notified the intermediary of its denial.  CMS did not furnish any information in response to either Loma Linda's discovery requests or the PRRB's subpoena for documentation on this issue. See PRRB Subpoenas at LLKC AR at 791,

PRRB. LLMC AR at 2-8; LLKC AR at 2-8. The Administrator held that the statutory deadline requires only that CMS "*render*" its disapproval within the 60 working day period.  LLMC AR at 7; LLKC AR at 6. The Administrator's position is that the statute does not require the giving of notice to either the intermediary or the provider within the 60 day period. Id.

      1. <u>The Administrator's Position is Inconsistent with Congressional Intent</u>

The Administrator's rationale is inconsistent with the underlying purpose of the statute.  The legislative history indicates that Congress was particularly concerned with respect to delays in processing exception requests.  The Committee Report explaining the purpose of the provision noted that "*numerous complaints have been received that the exceptions process is cumbersome, and that the rules are ambiguous and difficult to comply with, and that determinations are long delayed.*" Omnibus Budget Reconciliation Act of 1986, H.R. Rep. No. 99-727 at 76 (1986), *Reprinted* in 1986 U.S.C.C.A.N. 3607, 3666.

The Committee Report further stated as follows:  "*The Committee bill provides for the appeals process to be streamlined so that an exception would be deemed approved unless the Secretary disapproved it by not later*

---

LLMC AR at 977; Document Production Requests at LLKC AR at 461, LLMC AR at 363.

*than 45 working days from the date the application was filed with the*

*intermediary.  The Committee intends that the fiscal intermediaries will*

*complete within 15 working days their recommendation so that HHS will*

*have 30 days to make its decision.”* Id., at 3851.  The deemed approval

provision was subsequently enacted into law, with an amendment giving the

Secretary 60 working days to process exception requests.

The Secretary's interpretation would allow CMS an indefinite period

of time in which to notify the provider of its decision, assuming that the

disapproval was rendered within the 60 day time frame.  This is not

consistent with the legislative history, which indicates that Congress was

concerned with delays in processing exception requests.

Nor is such an interpretation consistent with well established notions

of due process.  Prompt notification of agency action is a hallmark of due

process. Such notification is necessary to allow an affected party to take

prompt action to protect its appeal rights. See In re Gault, 387 U.S. 1, 73

(1967) (“adequate and timely notice is the fulcrum of due process, whatever

the purposes of the proceeding.”)

The Secretary's interpretation would permit the evisceration of a

provider's appeal rights merely by delaying notification of the CMS

decision.  Pursuant to 42 C.F.R. § 413.194(c)(1) (2000), a provider has 180

days from the "*date of the decision*" to appeal the CMS denial to the PRRB. Under the Secretary's interpretation, an agency could bury its decision in its files until after the appeal period has expired. This is not a plausible interpretation of the statute.

Moreover, notification is inherent in the very concept of approval or disapproval. For example, the Secretary could decide to approve an exception request, and reverse positions within the 60 day period. The initial approval would not be binding upon the Secretary absent notification to the provider. Nor should the Secretary's disapproval be given effect until such time as the provider has been notified.

2. <u>Notification to Loma Linda was Required by FOIA</u>

The Freedom of Information Act ("FOIA") provides that the following categories of information be made available for public inspection: "*final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases.*" 5 U.S.C. § 552(a)(2)(A). This information must be automatically made available for public inspection and copying. <u>Jordan v. United States DOJ</u>, 591 F.2d 753, 756 (D.C. Cir. 1978) (en banc) (information falling within 5 U.S.C. § 552(a)(2)(A) must be made "*automatically available for public inspection; no demand is necessary.*"). These disclosure obligations must be construed broadly. <u>Id</u>. at 768.

12

The agency must also make available a general index of these records to facilitate retrieval. 5 U.S.C. § 552(a)(2)(E). The index and the records must also be made available on the agency's web site. Id.

Subsection (a) 2 further states as follows:

*A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if--*
*(i) it has been indexed and either made available or published as provided by this paragraph; or*
*(ii) the party has actual and timely notice of the terms thereof.*

5 U.S.C. § 552(a)(2).

In Bristol-Myers Co. v. FTC, 598 F.2d 18, 25 (D.C. Cir. 1978), the court stated that an action "*by the responsible decision maker*" which has the "*practical effect of disposing of a matter before the agency*" is final for purposes of the indexing and disclosure provisions of 5 U.S.C. § 552(a)(2)(A). See also American Mail Line, Ltd. v. Gulick, 411 F.2d 696, 702 (D.C. Cir. 1968), in which the court held that an order having "*immediate operative effect*" falls within the ambit of 5 U.S.C. § 552(a)(2)(A).

In the present case, the Secretary was required by statute to either approve or disapprove of the exception request within 60 working days. The denial letters dated November 15, 2000 were not merely advisory or pre-

13

decisional.  The Secretary's November 15, 2000 determination had the *"practical effect"* of disposing of the matter, absent an appeal by Loma Linda. As such, the denial letters were subject to the indexing and disclosure requirements of 5 U.S.C. § 552(a)(2)(A).

The CMS denial letters dated November 15, 2000 were not indexed or published in the publication known as CMS Rulings, which is available on the agency's web site at http://www.cms.hhs.gov/Rulings/CMSR/list.asp. Therefore, the denial letters dated November 15, 2000 could not have been *"relied on"* or *"used"* against Loma Linda until such time as the latter received "*actual*" notice thereof.  5 U.S.C. § 552(a)(2)(ii).

The transmittal letters notifying Loma Linda that its exception request had been denied were both dated after the expiration of the 60 working day period.[6]  Therefore, the November 15, 2000 decisions could not have been "*used*" or "*relied upon*" until after the 60 day deadline.  The August 28, 2000 exception requests must therefore be deemed approved. 42 U.S.C. §1395rr(b)(7).

---

[6] The 60th working day after the August 28, 2000 submission was November 24, 2000.  The intermediary notified LLKC that its exception request was denied by letter dated November 29, 2000.  LLKC AR at 443. LLMC was provided notification that its exception request had been denied by letter dated December 11, 2000.  LLMC AR at 202.

D. <u>Remand Is Required Based On The Secretary's Failure To Furnish An Adequate Record As To The Date Upon Which The Denial Letter Was Signed</u>

During the PRRB proceedings, Loma Linda submitted a discovery request seeking *"all documents, including, but not limited to, all worksheets, computer spreadsheets, and memo's associated with, or attached to, or referencing, the above referenced letter from Mr. Joseph Logue of HCFA, dated November 15, 2000.*" LLKC AR at 461; LLMC AR at 363.

On June 25, 2002, the fiscal intermediary responded as follows: *"Regarding the worksheets, computer spreadsheets, and memo's associated to CMS 11/15/2000 letter, at the time of this response the applicable files containing this information has not been located. Upon obtaining the documents, this will be forwarded to you."* LLKC AR at 501; LLMC AR at 387. This response was never supplemented during the PRRB proceedings.

On September 19, 2005, the PRRB issued a subpoena duces tecum to the intermediary requesting the envelope containing the CMS' November 15, 2000 denial letter, as well as any other documents substantiating the date upon which CMS mailed the letter to the intermediary. LLKC AR at 791; LLMC AR at 977. On October 4, 2005, the intermediary responded that it was unable to locate any documents responsive to the subpoena. LLKC AR at 790. LLMC AR at 973.

15

Loma Linda's complaint filed in this Court alleged that the Secretary maintains logs reflecting the dates upon which significant actions occurred in connection with the processing of exception requests.  See Complaint, LLKC at 24; LLMC at 23. The Secretary's answer admitted that such logs exist.  See Answer, LLKC ¶ 24; LLMC ¶ 23.

On April 4, 2007, Loma Linda submitted a discovery request to the Secretary seeking a copy of any logs reflecting the date upon which the denial letter dated November 15, 2000 was signed, and the date upon which such letter was mailed to the intermediary.  Defendant refused to furnish the requested logs.

On May 17, 2007, Loma Linda filed a Motion to Compel.  This motion sought those portions of the logs which reflect the date upon which the denial letter dated November 15, 2000 was actually signed by Mr. Joseph Logue, and the date upon which such letter was mailed to the fiscal intermediary.  This Court has not yet ruled on the Motion to Compel.

It is well established that judicial review of agency action under the APA must be based on the record before the agency at the time the decision was made.  Envtl. Defense Fund, Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981).  If the court determines that the record before the agency was inadequate, the proper course is to remand to the agency for additional

investigation.  The district court is generally not empowered to conduct its own review of the facts. Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).  See also Envtl. Defense Fund, Inc. v. Costle, 657 F.2d 275, 285 (D.C. Cir. 1981).  "*If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits.*"

Loma Linda's complaint alleged that the Secretary failed to demonstrate the date upon which the November 15, 2000 denial letter was actually signed.  See Complaint, LLKC ¶ 35; LLMC ¶ 34. This date is critical in determining whether the Secretary complied with the 60 working day requirement.  42 U.S.C. §1395rr(b)(7).  The Secretary's refusal to produce the logs in response to discovery requests at both the PRRB and this Court demonstrates the inadequacy of the existing record. Therefore, this matter should be remanded to provide the agency with an opportunity to review the logs, and to modify its findings if appropriate.

E.  The Secretary's Finding That Loma Linda Abandoned Its Argument Concerning The Merits Of The Exception Request Was Arbitrary And Capricious And Not Supported By Substantial Evidence

The Administrator apparently believed that Loma Linda abandoned the issue of whether its exception request was substantively meritorious.

Therefore, he did not render any findings or conclusions on this issue. Rather, the sole issue decided by the Administrator was whether the exception request should be automtically approved pursuant to 42 U.S.C. §1395rr(b)(7).

There was simply no basis for the Administrator's conclusion that Loma Linda abandoned the issue of whether its exception request was substantively meritorious.   Rather, as will be demonstrated below, the merits of the exception request were very much in dispute.

Loma Linda submitted pre-hearing briefs to the PRRB, which are referred to as Position Papers.   LLMC AR at 169-90; LLKC AR at 158-79. Loma Linda's argument as reflected in its Position Papers rested upon two independent grounds:  First, the exception request should be approved based on its substantive merits.  LLMC AR at 171-84; LLKC AR at 161-71.  This was the primary argument as reflected by the number of pages devoted to this issue.  Second, the exception request should be "deemed approved" based on the CMS failure render its disapproval within 60 working days. LLKC AR at 172-73; LLMC AR at 184-85.

The PRRB conducted a consolidated hearing on both cases on June 10, 2004.  The evidence presented at the Board's hearing was entirely devoted to the substantive merits of the exception request. Specifically, this evidence

18

was directed to the issue of whether Loma Linda served an atypical patient

population, and the costs increases associated with treating that population.

LLMC AR at 99-161; LLKC AR at 91-151 (Tr. 1-248).

LLMC and LLKC submitted post hearing briefs on August 5, 2004.

LLMC AR at 35-92; LLKC AR at 35-82.  The LLMC post hearing brief

framed three separate issues to be decided by the Board, in the following

order: (1) Was CMS correct in denying the exception request solely on the

basis of cost allocation deficiencies? (2) Did LLMC provide atypical

services? and (3) Did CMS process the exception request within the 60

working day period? LLMC AR at 41.  The post hearing brief submitted by

LLKC also framed three separate issues to be decided by the PRRB, in the

following order: (1) Did LLKC serve an atypically acute patient population?

(2) Did LLKC demonstrate cost increases due to patient atypicality? and (3)

Did CMS process the exception request within the 60 working day period?

LLKC AR at 41.

In sum, there was no conceivable rationale for the Administrator's

belief that "*the parties dispute not the merits of the denial of the provider's*

*exception request*…"  LLMC AR at 6; LLKC AR at 6.  Rather, it was

obvious that Loma Linda vigorously asserted the merits of the exception

request.  The Secretary's conclusion that Loma Linda abandoned any

19

argument concerning the merits of its exception request is not supported by the administrative record.  Therefore, this matter should be remanded for a determination on the substantive merits of the exception request.

### F.  The Secretary's Failure To Make A Determination On The Merits Of The Exception Request Constituted A Violation Of The APA And The Requirements Of Procedural Due Process

Under the Administrative Procedures Act ("APA"), agency decisions made on the basis of formal adjudications must "*show the ruling on each finding, conclusion, or exception presented*" and "*include a statement of-- (A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record*."  5 U.S.C. § 557(c).

The decision rendered by the Administrator clearly fails this test. The only finding made by the Administrator was that the exception request was timely disapproved. LLMC AR at 2-8.  LLKC AR at 2-8. The Administrator did not make any findings concerning whether Loma Linda qualified for an atypical services exception to the composite rate. Id.  This procedure did not comport with APA standards.

The Administrator could have remanded this case to the PRRB, thereby vacating the Board's decision. 42 C.F.R. 405.1875(h)(1) (2000). The remand order could have directed the Board to consider the substantive

merits of the exception request. 42 C.F.R. 405.1875(h)(2) (2000).

(Administrator may "*direct the Board to take further action with respect to the development of additional facts or new issues, or to consider the applicability of laws or regulations other than those considered by the Board*").  The Board's decision on the merits would then have been reviewable again by the Administrator.  42 C.F.R. 405.1875(h)(4) (2000).

Unfortunately, the Administrator failed to remand to the PRRB, and instead rendered a final agency decision.  The only alternative left to Loma Linda was to appeal the Administrator's decision to the federal district court.  There were no further administrative procedures available to Loma Linda to obtain a hearing on the merits of its exception request.

The end result was that neither the PRRB nor the Administrator rendered any conclusions on the merits of the exception request. This procedure simply cannot be squared with the requirements of the APA.  As such, the appropriate remedy is to remand back to the PRRB for a decision on the merits of the exception request, which decision would then be reviewable by the Administrator, and appealable to the courts.

Due process also requires that a party have an opportunity to be heard "at a meaningful time and in a meaningful manner" Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  An elemental aspect of due process is a statement

by the deciding authority of the reasons for its determination.  <u>Goldberg v. Kelly</u>, 397 U.S. 254, 271 (1970).

Loma Linda was not provided a meaningful hearing when the Administrator cut-off any consideration of the merits of the exception request.   The Administrator failed to provide any valid reasons for his failure to consider the merits of the exception request.  The procedure followed by the Administrator did not comport with even minimal due process standards.

## IV.    CONCLUSION

For the foregoing reasons, Loma Linda's motion for summary judgment should be granted.  The exception request submitted by Loma Linda should be deemed approved pursuant to 42 U.S.C. §1395rr(b)(7). Alternatively, this matter should be remanded back to the PRRB for a determination on the substantive merits of the exception request, and for further fact finding as to the date upon which the denial letter was signed.  A proposed order is attached.

DATED:  August 30, 2007

Respectfully submitted,


/s
_____
JEFFREY A. LOVITKY
Attorney at Law
1776 K Street, NW, Ste. 500
Washington, DC 20006
(202)429-3393
Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

LOMA LINDA UNIVERSITY              )
KIDNEY CENTER                      )
                                   )
Plaintiff,                         )
                                   )
                                   )
v.                                 ) Civil Action No. 06cv1926
                                   ) Consolidated with 06cv1927
                                   )
MICHAEL O. LEAVITT, IN HIS         )  (TFH)
OFFICIAL CAPACITY AS SECRETARY     )
OF HEALTH AND HUMAN SERVICES       )
                                   )
Defendant,                         )
_____)

## PLAINTIFF'S RULE 7.1 STATEMENT OF
## MATERIAL FACTS NOT IN DISPUTE

Pursuant to LCvR 7.1(h) of the local rules of United States District

Court for the District of Columbia, Plaintiffs, Loma Linda University

Kidney Center ("LLKC") and Loma Linda University Medical Center

("LLMC"), hereinafter referred to collectively as "Loma Linda", submit this

statement of undisputed material facts in support of its motion for summary

judgment pursuant to Fed. R. Civ. P. 56(a).

1.  LLKC is a non-profit freestanding outpatient dialysis facility located

in Loma Linda, California.  Loma Linda Kidney Center

Administrative Record (hereinafter "LLKC AR") at 236.

2.  LLMC operates a hospital based outpatient dialysis facility in Loma

Linda, California. Loma Linda Medical Center Administrative Record

(hereinafter "LLMC AR") at 522.

3.  Facilities providing End Stage Renal Dialysis ("ESRD") under the

Medicare program are reimbursed for outpatient dialysis services

under the "composite rate" system.  42 U.S.C. § 1395rr(b)(7).  The

"composite rate" is a prospectively determined payment rate for each

outpatient dialysis session.  Id.

4.  Facilities are authorized to obtain an exception to the composite rate.

42 U.S.C. § 1395rr(b)(7). An exception request will be deemed

approved unless it is disapproved by the Secretary within 60 working

days. Id.

5.  The Secretary has established the following procedures for the

processing of exception requests.  First, the exception request is

submitted to the intermediary.  The intermediary must make a

preliminary recommendation to CMS on the exception request within

15 working days.  PRM 2723, at LLKC AR 711.  The intermediary

next submits the exception request, along with its preliminary

2

recommendation, to CMS. PRM 2723.3(F), at LLKC AR 715. CMS then prepares a decision, and advises the intermediary of its action. PRM 2724 at LLKC AR 715. The intermediary then notifies the provider of the CMS decision.

6. LLKC and LLMC each submitted requests for an exception to the composite rate for outpatient dialysis services on August 28, 2000. LLMC AR at 517-44; LLKC AR at 235-52. These requests were submitted to Blue Cross of California, which serves as the Secretary's fiscal intermediary.

7. LLKC sought an additional $51.64 per treatment, over and above the composite rate of $134.95 for hemodialysis treatments, and an additional $49.43 for peritoneal treatments. LLKC AR at 238. LLMC sought an additional $243.02 per treatment, over and above the composite rate of $138.08 for hemodialysis treatments. LLMC AR at 524.

8. Loma Linda's requests were based upon atypical service intensity, and the resulting additional nursing and administrative costs. LLKC AR at 236; LLMC AR at 522.

9.  By letters dated November 15, 2000, CMS advised the Intermediary that it denied the exception requests submitted by LLKC and LLMC. LLKC AR at 634-41; LLMC AR at 960-65.

10. The CMS denial letters dated November 15, 2000 were not indexed or published in the publication known as CMS Rulings, which is available on the agency's web site at http://www.cms.hhs.gov/Rulings/CMSR/list.asp.

11. The CMS denial letters dated November 15, 2000 were not indexed and made available for public inspection in the FOIA Reading Room located in CMS's library - 2nd Floor, Central Building, 7500 Security Boulevard in Baltimore, Md., or in any other CMS FOIA reading room.  The CMS denial letters dated November 15, 2000 were not indexed and made available for public inspection in any electronic reading room.

12. The 60th working day after August 28, 2000 was November 24, 2000.

13. The CMS letters dated November 15, 2000 were signed by Mr. Joseph Logue after November 24, 2000.

14. CMS did not send notice of its denial to the intermediary until after November 24, 2000. LLMC AR at 25-32; LLKC AR at 25-32.

15. By letter dated November 29, 2000, the intermediary notified LLKC

4

that its exception request was denied.  LLKC AR at 443.  By letter

dated December 11, 2000, LLMC was notified by the intermediary

that its exception request had been denied.  LLMC AR at 202.

16. The CMS denial of these exception requests were timely appealed to

the PRRB by Loma Linda.  Loma Linda submitted pre-hearing briefs

to the PRRB, in which Loma Linda argued that it satisfied the criteria

for an atypical services exception.  LLMC AR at 171-84; LLKC AR

at 161-71.

17. The PRRB conducted a consolidated hearing on both cases on June 10,

2004.  Loma Linda presented evidence at the hearing in support of its

argument that it met the substantive criteria for an atypical services

exception. LLMC AR at 99-161; LLKC AR at 91-151 (Tr. 1-248).

18. LLMC and LLKC submitted post hearing briefs on August 5, 2004.

LLMC AR at 35-92; LLKC AR at 35-82.  The LLMC post hearing

brief framed three separate issues to be decided by the Board: a. Was

CMS correct in denying the exception request solely on the basis of

cost allocation deficiencies? b. Did LLMC provide atypical services?

and c. Did CMS process the exception request within the 60 working

day period? LLMC AR at 41.

19. The post hearing brief submitted by LLKC framed three separate

5

issues to be decided by the PRRB: a. Did LLKC serve an atypically acute patient population? b. Did LLKC incur increased costs due to patient atypicality? c. Did CMS process the exception request within the 60 working day period? LLKC AR at 41.

20. The PRRB rendered its decision in both cases on July 27, 2006. LLMC AR at 25-32; LLKC AR at 25-32.  The PRRB found that the exception requests were "*automatically approved*" because CMS failed to notify the intermediary of its disapproval within the 60 working day period. LLMC AR at 28; LLKC AR at 28.

21. By letter dated August 7, 2007, CMS requested that the Administrator review the decision of the PRRB.

22. By letter dated August 9, 2006, the Administrator advised the parties that it had decided to review the PRRB decision.  The Administrator stated that the issue under consideration is *"…whether the Board's decision is in keeping with the pertinent laws, regulations, and other criteria cited by the Board and by the parties in their comments."* LLMC AR at 17; LLKC AR at 17.

23. By decisions dated September 12, 2006, the Administrator reversed the PRRB. LLMC AR at 2-8.  LLKC AR at 2-8. The Administrator held that the exception request was timely disapproved. LLMC AR at

2-8.  LLKC AR at 2-8. The Administrator did not make any findings concerning whether Loma Linda satisfied the criteria for an atypical services exception. Id.

24. The Administrator's decisions constituted final agency action.  42 U.S.C. § 1395oo(f)(1).

DATED:  August 30, 2007

                        Respectfully submitted,


                            /s
                        _____
                        JEFFREY A. LOVITKY
                        1776 K Street, NW, Ste. 200
                        Washington, D.C.  20006
                        (202) 429-3393
                        Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

LOMA LINDA UNIVERSITY          )
KIDNEY CENTER                  )
                               )
Plaintiff,                     )
                               )
                               )
v.                             ) Civil Action No. 06cv1926
                               ) Consolidated with 06cv1927
                               )
MICHAEL O. LEAVITT, IN HIS     )  (TFH)
OFFICIAL CAPACITY AS SECRETARY )
OF HEALTH AND HUMAN SERVICES   )
                               )
Defendant,                     )
_____)

**ORDER AND JUDGMENT**

Pursuant to Fed. R. Civ. P. 58 and for the reasons stated by the Court

in its memorandum, it is this ____ day of _____ hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary

Judgment is granted; and it is further

**ORDERED AND ADJUDGED** that Plaintiff's exception request is

deemed approved pursuant to 42 U.S.C. § 1395rr(b)(7), consistent with the

opinion of the Court, and it is further

**ORDERED AND ADJUDGED** that Defendant pay Plaintiff its costs

and reasonable attorney fees herein.

_____
Judge of the United States District Court