**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LOMA LINDA UNIVERSITY KIDNEY CENTER, ) ) ) Plaintiff, ) ) v. ) ) MICHAEL O. LEAVITT, ) Secretary of Health and Human Services, ) ) Defendant. ) ) | Case No. 1:06CV01926 (TFH) Consolidated with Case No. 1:06CV01927 (TFH) |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Pursuant to 42 U.S.C. § 1395rr(b)(7), an application for an exception to the Medicare End Stage Renal Disease ("ESRD") composite payment rate "shall be deemed to be approved unless the Secretary *disapproves* it by not later than 60 working days after the date the application is filed." (Emphasis added.) In Defendant's Memorandum,[1] the Secretary explained that this provision by its terms requires only that exception requests be disapproved, not mailed, within sixty working days. Def.'s Mem. at 11-14. Because the statute is silent as to the timing of notice, the Secretary's interpretation is reasonable. Here, Plaintiffs' requests were disapproved by letters dated November 15, 2000, five working days before the sixty-day statutory deadline, which fell on November 24, 2000. Id. at 5. Therefore, this Court should uphold the Secretary's decision that the requests should not be "deemed to be approved" pursuant to § 1395rr(b)(7).

---

[1] Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment.

I.  **The Secretary's Interpretation of the Statute is Entitled to Deference Under Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)**

In his Memorandum, the Secretary pointed out that his interpretation of the Medicare statute must be upheld so long as it is "within the bounds of reasonable interpretation." Def.'s Mem. at 10 (citation omitted). Plaintiffs, in response, assert that "the Secretary has never issued any regulations" interpreting the ambiguous statutory provision at issue here. Pls.' Reply at 12.[2] Plaintiffs do not explain the import of this assertion. However, because the appropriate standard of review is a threshold issue for this Court's review, the Secretary briefly addresses this point in the event that Plaintiffs' intended argument is that the Secretary is entitled to Chevron deference only when he interprets a statute by way of regulation.

As an initial matter, the Secretary has in fact promulgated regulations specifying the procedures for applying for an exception to the payment rates for ESRD services. See 42 C.F.R. § 413.180(h) (2000). However, the Secretary's regulations addressing the specific matter at hand – the timing of the Secretary's denial of an exception request – mirror the requirements set forth in the statute.[3] Thus, before the Administrator of CMS issued the administrative decision under review, he was faced with reviewing the essentially identical regulatory and statutory provisions and applying them to the facts of this case. Plaintiffs cannot gainsay the Secretary's decision to proceed in this manner.

---

[2] Reply Memorandum In Support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment.

[3] Compare 42 U.S.C. § 1395rr(b)(7) (An exception application "shall be deemed approved unless the Secretary disapproves it by not later than 60 working days after the date the application was filed.") with 42 C.F.R. § 413.180(h) (2000) ("An exception request is deemed approved unless it is disapproved within 60 working days after it is filed with its intermediary.").

Agencies are ordinarily allowed to choose in an adjudication among permissible interpretations of statutes that they are charged with administering; they do not need to choose between interpretations beforehand through notice-and-comment rulemaking. See Nat'l Labor Relations Bd. v. Bell Aerospace Co., 416 U.S. 267, 292-94 (1974); Sec. & Exch. Comm'n v. Chenery Corp. ("Chenery II"), 332 U.S. 194, 202-03 (1947). As the Court explained in Chenery II, this has to be the case because, for example, "problems may arise in a case which the administrative agency could not reasonably foresee, problems which must be solved despite the absence of a relevant general rule. . . . In those situations, the agency must retain the power to deal with the problems on a case-by-case basis if the administrative process is to be effective." 332 U.S. at 202-03. The choice in proceeding with adjudication as opposed to further rulemaking "lies primarily in the informed discretion of the administrative agency." Id. at 203; see Shalala v. Guernsey Mem'l Hosp., 514 U.S 87, 96 (1996) ("The APA does not require that all the specific applications of a rule evolve by further, more precise rules rather than by adjudication."); see also Bell Aerospace, 416 U.S. at 294. Thus, when the Secretary promulgated regulations mirroring the timing provision of the statute and left any further refinement of that interpretation for case-by-case adjudication, he did so in complete accord with the APA and Supreme Court case law.

Furthermore, the Secretary's decision to proceed in this manner does not deprive the Secretary's interpretation of any amount of deference. Indeed, the Supreme Court has noted that an agency's interpretation of the statute it administers, arrived at through adjudication, should be viewed through the lens of Chevron. "[T]he overwhelming number of [Supreme Court] cases applying Chevron deference have reviewed the fruits of notice-and-comment rulemaking or

formal adjudication." U.S. v. Mead Corp., 533 U.S. 218, 230 & n.12 (2001) (collecting Supreme Court cases applying Chevron deference in adjudications) (emphasis added). This level of deference is all the more appropriate where, as here, the Court is confronted with an agency's interpretation, arrived at through adjudication, of a "complex and highly technical" program such as Medicare. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); see also Alaska Dep't of Health & Soc. Servs. v. CMS, 424 F.3d 931, 939 (2005) (applying Chevron deference to Secretary's interpretation arrived at through adjudication in context of Medicaid program); Texas v. U.S. Dep't of Health & Human Servs., 61 F.3d 438, 440 (5th Cir. 1995) (same); Georgia v. Shalala, 8 F.3d 1565, 1566-68 (11th Cir. 1993) (same); New York v. Sullivan, 894 F.2d 20, 24 (2d Cir. 1990) (same). Thus, the Secretary's interpretation of the statute – that the Secretary need only disapprove an exception request within 60 days, not also notify the provider within 60 days – is an interpretation of the statute issued in the context of a formal adjudication that should be viewed by this Court through the lens of Chevron and upheld so long as it is "within the bounds of reasonable interpretation." Def.'s Mem. at 10.

**II.   The Secretary's Interpretation of 42 U.S.C. § 1395rr(b)(7) is Reasonable**

    A.    42 U.S.C. § 1395rr(b)(7) Imposes No Deadline for Mailing Notice of a Disapproval

In support of his interpretation of the statute, the Secretary relied on Visiting Nurses Ass'n Gregoria Auffant, Inc. v. Thompson, 447 F.3d 68, 73-74 (1st Cir. 2006), which upheld the Secretary's interpretation of a similar regulation as requiring that a decision be made, not made and mailed, within a specified timeframe. Def.'s Mem. at 12. There, as here, the statute and regulations were silent as to when notice had to be provided.

Plaintiffs attempt to distinguish Visiting Nurses on the basis that it involved the

4

Secretary's interpretation of a *regulation* not a statute. Pls.' Reply at 12. Yet, Plaintiffs do not explain the legal relevance of this distinction.[4] Visiting Nurses rejected as "unnatural" the plaintiff's interpretation of the regulation at issue as including a deadline for notice because that requirement did not appear in the plain language of the regulation. 447 F.3d at 73. The rejected interpretation would have been equally unnatural if it had construed a statute, rather than a regulation.

The Secretary also relied on Sun Towers v. Heckler, 725 F.2d 315, 323-23 (5th Cir. 1984). In that case, the court of appeals rejected an argument that a decision by the Secretary was untimely because it was not mailed until four days after a statutory deadline had passed. See Def.'s Mem. at 12-13. The statutory provision at issue in that case required that the Secretary take specific action with respect to a decision by the Provider Reimbursement Review Board ("PRRB") within sixty days, but had "no additional requirement that the decision must be . . . mailed within that 60-day review period." Sun Towers, 725 F.2d at 324. Plaintiffs attempt to distinguish Sun Towers on the grounds that (1) in Sun Towers, the agency determination was made at the Administrator level, and (2) in Sun Towers, the Deputy Administrator signed and dated not only the decision at issue but also a "master control sheet" accompanying the file. Pls.' Reply at 12-13. Again, Plaintiffs do not explain the legal significance of these observations. The details of the Sun Towers case on which Plaintiffs focus are irrelevant to, and do not detract from, the legal proposition for which the Secretary relied upon Sun Towers: namely, that a regulatory (or – by extension – statutory) deadline for agency decision-making

---

[4]If Plaintiffs' argument is that this distinction is relevant to the standard of review, they are mistaken. See supra at 2-4 (The Secretary's interpretation of a statute he is charged with administering, arrived at in formal adjudication, is entitled to Chevron deference.).

does not, without more, impose the same deadline for the provision of notice.[5]

Moreover, Sun Towers placed no special emphasis on the mechanics of agency practice regarding the handling of PRRB files, such as signing a control sheet. Rather, the court described what the agency practice was with respect to the review of PRRB decisions and stated that the Secretary's interpretation that her decision was effective and timely when she signed the decision and control sheet were due deference. 725 F.2d at 324. Similarly here, the Secretary's view that his November 15, 2000 disapprovals were effective when signed and therefore timely is reasonable and entitled to deference. As for Plaintiffs' reliance on the purportedly distinguishing fact that the November 15, 2000 letters are dated on their first pages, this appears to restate their baseless argument, discussed below, that the letters may have been backdated. See infra at 9-10 (explaining that Plaintiffs offer no evidence that the disapprovals were not signed on November 15, 2000); see also supra n.5.

The reasoning in Visiting Nurses and Sun Towers demonstrates the error in Plaintiffs' suggestion that "disapprove" within the meaning of § 1395rr(b)(7) somehow encompasses the idea of notice. See e.g., Pls.' Reply at 8 ("The issue to be decided by this Court is whether a disapproval which has not been communicated can be final."). As those cases demonstrate, the rendering of a decision and the provision of notice are distinct acts. Indeed, Congress has at times explicitly imposed deadlines for both the making of a decision and the provision of notice, see Def.'s Mem. at 13-14, but other times has only imposed a deadline for making the decision.

---

[5] Like Plaintiffs here, the Sun Towers plaintiffs urged the court to "hold that the Secretary's decision does not become effective until it is mailed to prevent the Deputy Administrator from backdating his decisions." 725 F.2d at 325 n.14. The court "declined to adopt such a prophylactic rule." Id.

This is one of the latter situations.

Plaintiffs set forth a hypothetical which is intended to show that the Secretary does not "disapprove" an exception request until the disapproval decision is actually mailed. See Pls.' Reply at 8. In Plaintiffs' hypothetical, the agency official prepares two decisions–a disapproval on the 57th day and an approval on the 60th day; on the 61st day, the official mails the disapproval. According to Plaintiffs, this hypothetical illustrates that there must be "some objective act of communicating" a decision in order for it to be final. Id. at 9. Plaintiffs' hypothetical is inapposite for two reasons. First, as explained above, the "finality" of the disapproval letter as compared with some other document is simply not at issue here. In this case, there are no other documents competing with the November 15, 2000 denials of Plaintiffs' exception requests. Secondly, there is objective and incontrovertible evidence as to when the disapprovals issued–namely, the date that appears upon them (November 15, 2000), a date that places the disapprovals well within the statutory deadline.

> B.   The Issue Before this Court is Whether the Secretary Timely Disapproved Plaintiffs' Requests by Denying them in Writing within Sixty Days -- Not Whether the Denials Were Then "Final" for FOIA or Other purposes

Plaintiffs offer various arguments that focus on whether the November 15, 2000 letters were "final" for various purposes that are not implicated here, such as for review under the Administrative Procedure Act or for purposes of the Freedom of Information Act ("FOIA"). For example, Plaintiffs rely on Gallup v. Federal Energy Regulatory Comm'n., 702 F.2d 1116 (D.C. Cir. 1983), in support of their argument that the disapproval letters did not become "effective merely by virtue of being signed" within the statutory deadline. Pls.' Reply at 9. In Gallup, two parties each sought review under the APA in different circuits of a FERC order – one party

7

sought review in the Tenth Circuit, and another party sought review in the D.C. Circuit. The D.C. Circuit addressed the "first-filing rule" set forth in 28 U.S.C. 2112, and described itself as a "finish-line umpire[] in a 'race to the courthouse.'" 702 F.2d at 1118. Multiple petitions had been filed by both parties, including some that were filed even before FERC's formal order had been posted. The Court of Appeals dismissed the petitions that pre-dated FERC's final order. This is the context for the language cited by Plaintiffs as to when a decision is "final." Pls.' Reply at 10 (quoting Gallup, 702 F.2d at 1123).

Clearly, Gallup has no bearing on whether the Secretary disapproved the ESRD composite rate exception requests within sixty working days as required by 42 U.S.C. § 1395rr(b)(7). Unlike Gallup, this case does not involve an analysis of competing petitions for review or the circulation by an agency of a draft decision for comment. Cf. Gallup, 702 F.2d at 1123 (stating that an agency's circulation of a draft order for comment does not provide a basis for judicial review). This case is straightforward. Here, the Secretary simply interpreted § 1395rr(b)(7) to require that an exception request be disapproved, not disapproved and mailed, within sixty days. In other words, this matter turns on the meaning of "disapprove" in § 1395rr(b)(7), not the meaning of "final" in, or for the purposes of, some other statute. Questions about whether the disapproval letters were final for purposes of starting a race to the courthouse, triggering the right to judicial review under the APA, or triggering FOIA rights are distractions from the issue at hand.

Plaintiffs continue to argue that the Secretary had an obligation pursuant to FOIA to either place the disapproval letters in its electronic reading room or provide copies of the disapprovals to Plaintiffs within the sixty working day deadline set forth in 42 U.S.C. §

1395rr(b)(7).  Pls.' Reply at 13-16.  Yet, Plaintiffs have brought a claim pursuant to the Medicare statute, 42 U.S.C. § 1395oo(f)(1), not FOIA.  See LLUKC Compl. ¶ 3; LLUMC Compl. ¶ 3.  The relief which Plaintiffs seek is in no way connected to the relief which may be afforded under FOIA; nor do Plaintiffs cite a single case which indicates that the Secretary's substantive decisions regarding the Medicare program should be judged by reference to FOIA.  As the Secretary stated in his Memorandum, Def.'s Mem. at 15, there is nothing about FOIA – a statute that governs the disclosure of government records – that can impose stricter deadlines for the Secretary's actions than those contained within the Medicare statute itself.  See also Sun Towers, 725 F.2d at 323-24 (rejecting argument that, in order for the Secretary's administrative decisions to be timely, they must be "placed in the public domain" because only then would the decisions become final for purposes of the Federal Rules of Civil Procedure).

**III.    Remand is Unnecessary**

Should this Court uphold the Secretary's position that § 1395rr(b)(7) requires that a request for an exception is not deemed approved so long as the Secretary disapproves it within sixty working days, even if it is mailed later, Plaintiffs seek a remand to the PRRB (1) to determine the date upon which the disapprovals were *signed*, Pls.' Reply at 5-7, and (2) for a decision on the merits of their exception request, id. at 1-5.

      A.    There is No Basis for a Remand to Determine when the Letters were "Actually" Signed

Plaintiffs concede that they have no evidence that the disapproval letters were not signed on the same date which appears upon them.  See Reply Mem. In Supp. of Pls.' Mot. to Compel Prod. of Doc. at 3 ("Plaintiff[s] could not possibly have argued before the Board that the disapproval letter[s were] not actually signed on November 15, 2000 precisely because [they]

had no information to the contrary."). Their claim that CMS dates its correspondence when "prepared" rather than when signed is unsupported. <u>See</u> Pls.' Reply at 6. Equally baseless is the suggestion that this Court should suspect the Secretary of backdating his correspondence. <u>Id.</u> at 6-7.

Although Plaintiffs argue that CMS failed to cooperate in discovery at the administrative level, <u>id.</u> at 6, the Secretary has already explained that CMS was not a party to these proceedings.[6] Def.'s Opp'n to Pls.' Mot. to Compel at 4. Discovery was therefore not properly available against the agency. <u>Id.</u> at 5. Nonetheless, Plaintiffs did have the opportunity to examine Michael Powell, a CMS official with 28 years of experience at the agency, 26 of which had involved renal dialysis issues. LLUKC A.R. 129. They did not use this opportunity to ask about the logs they now seek. Mr. Powell did not sign the disapprovals,[7] but Plaintiffs could certainly have inquired of him whether it was the practice of his office to date its correspondence when prepared rather than when signed, as now claimed by Plaintiffs.

B.   Plaintiffs failed to seek a remand on the merits

Plaintiffs believe it ought to have been obvious to the Administrator that if she reversed the PRRB on the question of whether the exception requests were deemed approved, Plaintiffs would want her to remand to the PRRB on the merits of their exception requests. What they fail

---

[6] Plaintiffs state that the agency has not disputed that the sought-after logs would reveal the date upon which the disapprovals were "actually" signed, Pls.' Reply at 6, but the Secretary has never conceded that the logs would show any such thing. Defendant's Answers stated that the agency kept logs concerning exception requests "arranged by type of exception and exception window." LLUMC Answer ¶ 23; LLUKC Answer ¶ 24.

[7] Joseph Loge, who signed the disapprovals at issue, had by that time retired. LLUKC A.R. 130

to appreciate is that, due to their silence, their posture was indistinguishable from that of a party that had abandoned its hopes of prevailing on the merits. The Administrator explicitly told the parties she might reverse, affirm, modify or remand. Def.'s Mem. at 16. As only one legal issue was before the Administrator, Plaintiffs ought to have foreseen the need to notify the Administrator of their intent to pursue the merits of their request, in the event they lost the timeliness issue. Therefore, Plaintiffs are not now entitled to a remand that they failed to seek below. Def.'s Mem. at 16-17.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendant's Memorandum, the Secretary respectfully requests that this Court grant Defendant's motion, deny Plaintiffs' motion and enter judgment for the Secretary.

Respectfully submitted,

/s/
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

/s/
CHRISTOPHER HARWOOD
N.Y. Reg. No. 4202982
Assistant United States Attorney
Civil division
555 Fourth Street, N.W.
Washington, DC 20530
(202) 307-0372

/s/
BRIDGETTE L. KAISER
D.C. Bar No. 492406
U.S. Department of Health and Human Services
Offices of the General Counsel
Centers for Medicare and Medicaid Services Division
330 Independence Ave., S.W.
Cohen Building, Room 5309
Washington, D.C. 20201
(202) 205-5872/FAX (202) 260-0490

OF COUNSEL:

DANIEL MERON
General Counsel

CAROL J. BENNETT
Acting Associate General Counsel
for Litigation

MARK D. POLSTON
Deputy Associate General
Counsel for Litigation

United States Department of
Health and Human Services